Good morning, Your Honors, and may it please the Court. Ryan Kaplan appearing on behalf of the appellants, First One Lending Corporation and John Becerra. I'd like to reserve four minutes for rebuttal. Please watch the clock. Thank you. This case comes before this Court following the District Court's granting of a summary judgment, finding that Hartford did not owe a duty to defend its insured for claims involving false advertising under the Lanham Act and unfair competition. That ruling was based on California Insurance Code Section 533, which precludes indemnification of willful acts, and a professional services exclusion within the policy dealing with the rendering of financial services. It's important to recognize at the outset that the context of these rulings was in the duty to defend, which is, you know, triggers when there's a potential for coverage. There was no finding of fact in the underlying litigation, the NACA action, as to any of these claims. The case settled by virtue of not having an insurer-funded defense, and that settlement admitted no liability on behalf of the insureds, and that settlement was approved by the Court. Here, the Lanham Act claims and the unfair competition claims were simply allegations to therefore trigger the duty to defend. The predicate issue here is also that both this Court and the District Court on remand did find that potential for coverage in those allegations. Can you help me understand? I've been struggling with the California case law, some of which says that if a covered claim is inseparably intertwined with willful conduct, then Section 533 applies. Others seem to parse them out and look at two different, takes two different types of conduct, which seem to be entwined and separates them. And so I guess one of the questions I have is the complaint says that the use of NACA's name was part of a fraudulent scheme by First One to lure in clients and take money from them in advance fees for certain mortgage-related work and then shunt them off to NACA. That's the gist of their complaint. How would we separate the Lanham Act claim from the fraudulent scheme that's alleged in the complaint? So what would that hypothetical look like? Yes, Your Honor. The way I would distinguish it would be between what I would refer to as actionable conduct being alleged in the NACA action and kind of colorful conduct. And what's the other one? Colorful conduct or colorable conduct or allegations used to bolster those claims. So I think the distinction that Your Honor is recognizing is this. Where the underlying claims necessarily require as an element of those claims a finding of willfulness, then you don't necessarily have that potential for coverage triggering the duty to defend. Is necessarily, is that the standard in the California cases? Yes, Your Honor. If you were to look at which cases actually do apply. Because I look at Mntarsi and they're saying, oh, well, they were negligent. I mean, they were actually, the accusation was negligence in caring for this person. But the court looks at the context of the case and the factual context and says, well, in this case, negligence was really willful because they were holding her as a slave. Right. In that case, and that's when you get into this kind of subspecies of the inherently harmful willful conduct that's been developed under 533 for this very specific, I'd say, very focused set of facts in which things like enslavement, child molestation of a five-year-old. But then in Horace Mann, you know, with the child molestation, they separated them out. So as I said, I didn't see a necessarily component in the California cases. I'm not sure what the line is, however. I would argue this. With respect to Horace Mann, they parsed it out because it was not necessary for the allegations in that claim. Because it was both a child molestation as well as a public embarrassment claim, which in and of itself is separate from the child molestation. In Mntarsi, they had negligence. I mean, I suppose that could have been their babysitter, that they were negligent in not caring for her. But they looked at the facts, and in that context, they said, well, everything is going to be willful. So why can't ‑‑ so I'm just not sure why we can't look at what the court, the district court did here and say, well, everything has to do with this fraudulent scheme. There's no percentage for First One to use the name of NACA if it wasn't to lure customers in for their fraudulent scheme. I would say that the actionable conduct, which I was referring to earlier in the Lanham Act claim, is actually that First One misrepresented or made false statements regarding the nature of both its services as well as the affiliation with NACA. So you have to look at the complaint as a whole, and you can't look at particular allegations in isolation. That's the duty to defend standard. And so going back to, say, Horace Mann, in that case, you were able to distinguish between what was necessary to prove the claims versus, let's say, J.C. Penney, which was another child molestation case, in which there was not that separate, those separate allegations for which intentionality or inherently harmful conduct was necessary to prove those claims. So in the Lanham Act, they would have to prove damages, that they were harmed. And their theory of harm is that they were harmed by the fraudulent acts of luring clients in using their name and then lessening their goodwill because of the fraudulent conduct. So that is an element of the Lanham Act claim. It's actually not an element of the Lanham Act claim per se. To prove the Lanham Act claim, there's no requirement that intentionality to defraud is part of that claim. So let's talk about the specific fraudulent, or not fraudulent, false affiliation component of NACA's Lanham Act claim. That's actually a disputed issue of fact. If you look at the record, in particular the deposition testimony of Mr. Becerra, as well as the tender phone call, Mr. Becerra all along believed he was a referral, a registered referral agent for NACA. So when NACA alleges, and recall, we're at the duty to defend stage. When NACA simply alleges that Mr. Becerra or First One were intending to defraud consumers by creating a false affiliation, as they say, with NACA, that is not a finding of fact, and that is not necessarily something that is a necessary element to prove that claim. So after DRE orders, sends out an order saying stop charging advance fees for any of your services, and after that point, is there a basis for saying we're a legitimate referral agent engaging in a legitimate business? A few things, Your Honor. Yes, because the DRE letter did not refer to the referral agency with NACA. Number two, the DRE letter was not addressed to both insureds. It was only addressed to First One. It concerned conduct that predated the NACA action conduct, in that it referred to alleged loan modification conduct, whereas the NACA action refers to documentation service, which postdates the DRE order. So it would be a leap, particularly at the duty to defend analysis stage, to say that you can presume intentionality when, frankly, it's not even the appropriate test, because it's not a necessary element for the Lanham Act claim to begin with. Can I go back to this inseparably intertwined issue for a second? So in this, in the Mentarsi case, there's a statement that's over on, it's a 288 of the CALAP IV version of it. It says, Section 533 precludes indemnity for a lost cause by conduct of a loan modification conduct that standing alone could be characterized as negligent rather than intentional, but that is so closely related to intentional misconduct as to be inseparable from it. So if that's a correct statement of the standard, how is, when I'm grappling, it's the same issue Judge Acuda was talking about. Isn't this closely related enough that it's inseparable, the intentional conduct, in other words? I don't think it is, Your Honor. If what I just quoted is the standard, parse out for me how you still come within it. Well, I would first say that the Court of Appeal decision is contradicted by the California Supreme Court cases in Horace Mann and Gray v. Eric. Though Horace Mann also talks about inseparably intertwined, right? They just didn't find it in that case? They just didn't find it in that case because not all of the causes of action required that alleged inherently harmful conduct here. And here we have both alleged false or misleading statements of fact regarding not just the affiliation with NACA, but also the nature of First One's Own Services, and we have disputed issues of fact as to whether or not those were in fact actionable or actually for which they would be liable. At the duty to defend stage, you can't necessarily negate the potential for a defense. Because recall, within the duty to defend context, it's entirely possible that an insured will not have damages assessed against it, will not be determined to be liable. But the defense component of a CGL policy is that nevertheless, unless intentionality is an absolute requirement for that cause of action, or I should say willfulness or inherently harmful conduct, unless you cannot in any conceivable world prove up that claim without proving or without establishing that type of willfulness, then you're going to be in trouble. So I don't see that line in any of the cases. I mean, that would certainly be helpful had the California courts presented that sort of line. I mean, I'm just looking at the Tarsian. They interpret Horace Mann as saying that the reason they parsed things out was because the alleged negligence acts on the basis of spatial proximity, not the necessary elements of the claim, which seems to me very different. Here there was a spatial and temporal proximity between the use of the NACA name and the alleged scheme. Two things, Your Honor. I would say that the standard is really articulated in Montrose in this Court's Anthem electronic opinion, finding that the duty to defend is to protect and to protect, not to defend. So that's the bedrock principle applying the duty to defend. With respect to the temporal component here, bear in mind that's one of many allegations found within the NACA complaint, on which NACA is alleging that they have been harmed by false or misleading statements regarding both the nature of First One and the nature of Second One. And so I think that's one of the things that we need to look at.   Next slide, please. They said the allegations of negligent conduct are not inseparably intertwined with the allegations of willful conduct. But we recognize that that's the standard. Right, Your Honor. And in that case, I think you have to look and see whether or not the intentional or the inseparable conduct was a necessary component to the underlying claim. Well, there they just looked. They said breach of fiduciary duty is pretty broad and it isn't necessarily willful. It could be just negligent. I don't see why that's applicable here. I mean, there's not a negligent fraudulent scheme to defraud clients, which is what's alleged. It's what's alleged, but it's what was never proven, and it's not the only thing that was alleged in the NACA action, Your Honor. Okay. Well, we've taken a lot of your time, so do you want to save that for rebuttal? Sure, thank you. Okay. Good morning, Your Honors. May it please the Court, Ann Johnston for Hartford Casualty Insurance Company. The appellants here articulated the standard as follows. They said first in the opening brief, they said that 533 can never bar a duty to defend. I think we've seen lots of case law that shows that that's incorrect. Then in the reply, they said if intent isn't a required element of the claim, 533 can't bar a defense. That's also not the standard. The standard here is the fact is there's lots of different standards for the application of 533 in a duty to defend situation. It applies when there's inherently harmful acts. In which case are you relying on among the different standards? Well, the Aetna casualty case articulated the standards. Coit Drapery articulated the standards. Energy Insurance Mutual articulated the standards. And in fact, Horace Mann articulated the standards. So in United Grocers, we said, look, the complaint can be very dramatic and say everything is fraudulent. But we have to consider whether there's a potentially non-willful activity, possibly negligent activity. And so here we have first one. And in a hypothetical, one would say first one believed it had a legitimate advisory business helping homeowners put together their documents. And then as a registered referral agent refers it to NACA. And they believe they were registered and they used their name, perhaps negligently. And so although the complaint alleges a fraudulent scheme, why isn't it under our jurisdiction? Under United Grocers standard, why isn't it possible there was just mere negligence in the use of NACA's name leading to the Lanham Act allegation, violation allegation? Well, all of the allegations are inseparably intertwined, Your Honor. I mean, Paragraph 3 of the complaint makes that very clear. The action arises from the fraudulent scheme. The scheme is based on numerous false and misleading representations, including the false affiliation. They go through all the other allegations and tie that to the scheme. And they then articulate the purpose of the scheme is to... But they wouldn't have had to prove all of that to prove the Lanham Act claims, would they? Just because they allege it doesn't mean they have to prove it. That's true, but the Lanham Act claims only exist in this complaint in the context of the scheme. NACA was upset about the fact that there was this entity that was out there defrauding distressed homeowners, and that that entity was somehow affiliating or tying itself to NACA, making it look bad, making people get confused. It was all part of the scheme. There's no separate and independent. Your Honors, we're asking the appellate's counsel here, well, what's the claim that they're going to, you're going to separate out, that they're going to proceed on, where none of this other, the scheme doesn't matter, and there isn't one. But if the case had gone to trial, though, and, you know, it had gone to trial on all of the claims, including the Lanham Act claim, I mean, you don't honestly think, do you, that NACA would have said, well, even though we don't really have to prove any of this intentional or willful misconduct for the Lanham Act claim, we want you to instruct the jury that way anyway. They wouldn't have had to, they wouldn't have done that, would they? Well, the Lanham Act claim, the false affiliation claim, the false affiliation had to do with the scheme. They were using the scheme to falsely affiliate. I guess I'm asking a simpler question. If it had gone to trial, the jury gets instructed on the elements of a Lanham Act claim. It's not going to include anything about intent, right? Well, this gets into the relief that was being sought. I think there would be an intent element that was relevant to that, but that had to do with the kind of relief that they were seeking for the elements of the claim are. They wouldn't be instructed on intent, right? Yeah, I would agree. But I think my point is that that claim is inseparably intertwined in the context of this lawsuit. And there are many cases that go to the inseparably intertwined claim. And there are cases that acknowledge that those negligence claims can be, like Rizzo, where the court was talking about, let me find it here, claims that Rizzo negligently enriched himself at the expense of the city in negligently approved contracts, wasted public funds under California Civil Code of Procedure 526A. Those could have all been separately proven and pled, but the court said those are inseparably intertwined with non-covered conduct. And that is the context here. All of the conduct that's pled here, while you may arguably have separate negligence claims, the facts are all part of one course of conduct. And that is what the cases say should be the inquiry. Counsel, let me put it this way. Could NACA have prevailed on the Lanham Act claim even if the jury did not find that first one acted willfully because there's no requirement of intent? Yes. I think so. Therefore, coverage. Therefore, duty to defend. No, if they're inseparably intertwined, meaning that the entire case is dependent upon these allegations of inherently harmful conduct, and I don't know that there's any dispute that this was inherently harmful conduct in the context of a mortgage scheme at the height of the mortgage crisis. Those separate claims, they aren't, that's the point, they aren't separate. They are part of the allegations of what NACA, NACA's not going to go forward and litigate this case without the fraudulent mortgage scheme being part of the case. So NACA says the way it's harmed in its complaint, the way it's harmed is that it diverted clients and that it lessened its goodwill. And the lessening of the goodwill was you're connecting us to this fraudulent scheme. How about the diverting clients? How is that connected to the fraudulent scheme? Why couldn't they prove this advisory group is just taking away clients that they would normally get? But that doesn't mean that it was a willful act. I don't know that that was what they were alleging. What they were alleging was that they were soliciting these clients and then referring them on to NACA. So it was less about taking clients away from NACA and making everyone think that they were associated with NACA, because the allegation is that they took the money, first one took the money, and then they passed them on to NACA to actually do the work that they had already paid for. How about the document compilation service, which opposing counsel says was legitimate and wasn't prescribed by the DRE order? Well, it was prescribed by the DRE order. I think the DRE order says that they are to submit a complaint to NACA, and that's what they're doing. They are to stop collecting advance fees in any form and under any conditions with respect to the performance of loan modification or any other form of loan, mortgage loan forbearance services in connection with loans on residential property, et cetera, et cetera. So any other form, and this was part of it. In fact, if we look at when John Visera, the principal of First One, first reports the claim, he characterizes it. As such, as a financial transaction, part of assisting on mortgages. So I don't know that there was any question, I mean, they can say that, but I don't know that that's reasonable to make that argument. Kelsey, do you want to say anything about the financial services issue? The financial services exclusion has a somewhat similar analysis in terms of, again, it kind of goes to this first call that John Visera made when he and how he characterized the claim. And in that first call, he says, you know, the NACA action arose out of a financial product that we prepared, specifically a financial analysis of the their income, their debts, et cetera, and we prepare it in accordance with general lending underwriting standards. That's the insured talking. So to say that they had a reasonable expectation of coverage when he's basically characterized it within the exclusion, I think is asking a lot under that record. These were, this did all arise out of this mortgage scheme. And for that reason, the financial services exclusion would apply. Is there anything else that the court has a question about? What's the showing with respect to whether it resulted? I'm sorry, say that again. What's the showing with respect to whether the advertising themes resulted from the provision of financial services? Well, if it resulted from and arising from, I think we've briefed that those are, that terminology has similar meaning in the context of the exclusion. And I think here, again, it gets back to this, the gravamen of the action, which is that this fraudulent mortgage scheme, providing, taking money from the homeowners in order to give them this advice about how to put your documents together, and then you're going to get some kind of mortgage forbearance, that all, that activity qualifies under, comes within the financial services exclusion. And every other allegation in this complaint is related to that activity. That activity is the basis for why anyone's complaining, why NACA is suing them. So the argument that they make is that that swallows up any insurance coverage, because everything they do is related to the rendering of financial services. So they, somebody comes into their office and slips on the floor, and they wouldn't have been in the office slipping on the floor, but for the fact that they were rendering financial services. How do you respond to that argument? No, certainly no one would, I, the jury would not take the position that if you came into the office and you slipped on the floor, that arose out of the rendering of the financial services. I think if we take a common sense approach to the causation element there, that there's no causation between the provision of financial services and slipping on the floor. But here there is that causal, that causal connection. There is some connection between the, actually it's the failure to provide the financial services and the injuries or damages that are alleged here. That causal connection exists, because And is that the lessening of goodwill to NACA, or what is the, just walk me through the causal steps. So the relationship between the financial services exclusion and why that would apply to everything here is that the base allegation is that first one, failed to provide a financial service. They failed to do the thing that they were being paid for. And if they'd done the thing that they said they would do, if it helped out in any way or they hadn't charged those fees for nothing, no one would be upset about anything. So the false affiliation, every other claim, every other damage, relates to that, the heart of those allegations, which again is the fraudulent scheme. Does the panel have any other questions? Thank you, Your Honors. I see my time is brief. I'll be quick. With respect to the five through three application, if you look at the complaint in the NACA action, there are specific allegations talking about things that are separately actionable. If you look at paragraph 36, for example, talks about just the false affiliation letters by themselves, separate and apart from the quote-unquote fraudulent scheme is actionable under the Lanham Act. On a duty to defend analysis, that is enough. I'll turn briefly to the, actually one more point I want to make on the five through three is these are claims for false advertising or false affiliation. These were not claims brought by the alleged homeowners. And so when you talk about what the inherently harmful conduct is and who that befell to, this is effectively a competitor in the case. I don't like the way you're advertising. It's affecting me. You might want to say something about the financial services. I'm going to right now, and that segues into it. This was not a claim brought by the homeowners. This was not a professional services or professional negligence claim. This was a false advertising claim. It was for alleged false representations or misrepresentations regarding services and products. This case is more akin to the Atlantic Lloyd case or the Food Pro case, where just because a insured is undertaking a business that may be captured within a professional services exclusion, the actionable conduct, and again, getting back to the distinction between the actionable conduct and the colorful conduct, as I said, the actual conduct was not what was within the actual exclusion. If I may just finish this point real quick, Your Honor, that is the appropriate application of the standard for applying exclusions, which is it must apply in all possible worlds. Meaning there has to be 100 percent overlap between what the excluded conduct is and what the actionable conduct is. Otherwise, it's not applying in all possible worlds, and it can't apply here. Thank you, Your Honor. Did you respond to the financial? That was the response. That's the response. Okay. Got it. Thank you.
judges: O'scannlain, Ikuta, Kennelly